**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ARTHUR A. SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 09 CV 7472** |
| **v.** | ) | |
| | ) | **Judge Joan H. Lefkow** |
| **LEVY SECURITY CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff Arthur A. Smith filed suit against Levy Security Corporation, alleging age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"),[1] 42 U.S.C. § 12101 *et seq.*[2] Before the court is Levy's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the motion [#43] will be granted.[3]

---

[1] The ADA was significantly amended, effective January 1, 2009. Congress did not express its intent that these amendments be retroactive. *See* ADA Amendments Act of 2008, Pub. L. No. 110–325, 122 Stat. 3553 (2008). The court applies the version of the ADA in place when the events that gave rise to Smith's claims occurred. *See Fredricksen* v. *United Parcel Serv., Co.*, 581 F.3d 516, 521 n.1 (7th Cir. 2009).

[2] Levy notes that Smith's complaint also includes allegations that might be construed as claims of race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.* The complaint does not explicitly reference Title VII, however. Nor does Smith argue that he has asserted Title VII claims in his response to Levy's summary judgment motion. Therefore any claims of race or sex discrimination under Title VII have been waived.

[3] This court has jurisdiction under 28 U.S.C. § 1331, 42 U.S.C. § 12117, and 29 U.S.C. § 626. Venue is proper under 42 U.S.C. § 12117 and 28 U.S.C. § 1391(b) because the alleged unlawful employment practice occurred in this district.

# BACKGROUND[4]

## I.    Smith's Employment With Levy

Smith worked for Levy as a door ambassador at Evanston Hospital from April 24, 2006 until his termination on December 29, 2006.  Beginning in July 2006, Michael Potter was the corporate director of public safety assigned to Evanston Hospital.  Justin Dodson was the assistant director of public safety, and he reported directly to Potter.  Dodson was Smith's supervisor.

Johnnie Robinson was another door ambassador at Evanston Hospital.  He and Smith were often scheduled to work at the same time, and they had ongoing disputes about relieving each other from breaks.  Smith and Robinson complained about each other to Dobson, who concluded, based on the nature of the complaints and his own observation of the situation, that both employees were sometimes intentionally late in providing relief to the other.  Because of the frequent complaints, Dobson prepared a written schedule outlining break and shift times for Robinson and Smith.

Smith was hospitalized on November 8, 9, and 10, 2006.  When he returned to work on Monday, November 13, Smith gave Potter a note from his doctor that stated, "Art Smith may return to work on Monday 11/13/06.  He needs to sit frequently and be able to use [the] restroom frequently."  (Amend. Compl. Ex. C.)  Neither Potter nor Smith gave the note to Dodson.

Shortly after Smith returned to work, Potter told him that he could use the restroom whenever he needed and that he did not need to request permission to take bathroom breaks.

---

[4] The facts set forth in this section are derived from the statements of fact and supporting documents submitted by the parties to the extent they comport with Local Rule 56.1, as discussed in more detail below.  They are taken in the light most favorable to Smith, the non-movant.

Dodson and the other supervisors, on the other hand, indicated that Smith still needed to request relief from another door ambassador before he could go to the bathroom.

On December 5, 2006, Dodson distributed a memorandum outlining new break reporting procedures for all door attendants and dispatch officers. (Def.'s Ex. J.) The policy required door attendants to inform dispatch officers of breaks and report the nature and duration of each break, including bathroom breaks. (*Id.* ¶¶ 5–7; Dodson Dep. at 61.) Sometime thereafter, Smith complained about Dodson's policy to Potter and said that he was not able to use the bathroom whenever he needed. Potter brushed Smith off, and told him to talk to Dodson about the issue first.[5]

On December 7, 2006, Dodson prepared an employee action form asserting that Smith had been eating while on duty. (Def.'s Ex. K.) The next day, Dodson prepared an employee action form asserting that Smith had failed to relieve Robinson for his lunch break. (Def.'s Ex. L.) The December 8, 2006 form states that Smith had been verbally counseled by Porter on December 7, 2006, for his failure to relieve Robinson, and that Smith's subsequent conduct was "indicative of an unacceptable behavior pattern by Arthur Smith." (*Id.*) The December 7 and December 8 forms state that Smith received "counseling/discussion" as a result of his infractions.

---

[5] In his response to Levy's statements of fact, Smith asserts that he requested a meeting with William Larson, a human relations manager, after Potter refused to talk to him about the new break reporting procedures. (*See* Pl.'s Resp. to Def.'s Stmts. of Fact ¶¶ 16–17.) In support, he cites Exhibit G-12 at page 1542, which consists of handwritten notes dated December 5, 2006. Smith fails to identify the author of the notes or the circumstances under which they were prepared. In his response brief, Smith states that the same notes reflect Larson's notes from a conversation with Potter that occurred on December 5, 2006. (Pl.'s Br. at 13.) It is unclear how Larson's notes from a conversation with Potter might constitute admissible evidence to support the assertion that Smith requested a meeting with Larson. Because the court cannot determine the provenance or reliability of the notes, it disregards this portion of Smith's responses to Levy's statements of fact.

Dodson prepared another employee action form on December 13, 2006 that asserted that Smith had failed to relieve Robinson for a lunch break. (Def.'s Ex. M.) The form states that "[a]ny further disobedience by Smith will result [in] further disciplinary action up to and including discharge from employment." (*Id.*) The form states that Smith received a "written warning" as a result of his conduct. (*Id.*) Sometime between December 1 and December 13, 2006, Dodson prepared another employee action form because Smith was sitting while on duty.

Smith complained about the employee action forms to Potter, who decided to investigate them before they were formally issued and placed in Smith's file. (Dodson Dep. at 78.)

At some other time, Dodson prepared an employee action form stating that Smith had been publicly disrespectful and unprofessional during a telephone call with Dodson. (Def.'s Ex. I.) Although the form indicates that it was presented to Smith and that he refused to acknowledge the discipline, Smith denies that he was ever presented with this employee action form. He notes that the footer at the bottom of the document indicates that it was not printed until December 26, 2006, over three weeks after it was allegedly signed by Dodson. (*See id.*) The form states that Smith received "counseling/discussion" as a result of his misconduct. (*Id.*)

## II.     The December 14, 2006 Meeting and Smith's Termination

Smith, Dodson, and Potter met on December 14, 2006 to discuss the employee action forms. During the meeting, Smith told Potter that he felt that he was being treated unfairly based on the series of disciplines. Smith said that it was unfair to discipline him for sitting while on duty because his doctor's note stated that he should be able to sit frequently. Potter retracted the employee action form for sitting while on duty. Smith also requested Potter to retract the discipline for eating while on duty, but Potter refused. Potter explained that Smith's doctor's

note did not say that Smith needed to eat while he was on duty.  Dodson testified that the December 14 meeting was the first time he learned that Smith had a doctor's note regarding any medical condition.

After Potter refused to withdraw the discipline, Smith told him something to the effect of "Levy policy is Levy policy and outside of here Levy policy doesn't matter and what happens on the outside happens on the outside."  (Potter Dep. at 71; Dodson Dep. at 100.)  Potter perceived the statement as a threat.  He understood Smith to mean, "Hey, I'll see you outside of here when we're done . . . based on Smith's body language, movements, [and] his elevated voice levels." (Potter Dep. at 77–78.)[6]  Potter thought that Smith was saying "basically I can do whatever I want to you outside of this, because Levy policies don't apply."  (*Id.* at 87.)  Potter then asked Dodson whether he thought the statement was a threat, and Dodson stated that he did.  Smith then yelled that Potter should not "put words in his mouth."  (*Id.* at 74.)  Potter also asked Smith, "Are you threatening me?"  (Smith Dep. at 95.)  Smith responded, "No, I'm not threatening you."  (*Id.*)  Potter then said, "Yeah, you did.  You threatened me," and ordered Smith to leave the office.  (*Id.*)  Smith reiterated that he had not made a threat as he was leaving Potter's office. (*Id.*)

After the meeting, Dodson prepared another employee action form documenting the events that occurred.  (Def.'s Ex. N.)  He recommended that Smith be suspended or discharged. (*Id.*)  Potter contacted Patricia Hoppenstedt, the assistant vice president of human resources, and reported that Smith had threatened him.  Hoppenstedt assigned William Larson, a human

---

[6] Smith moves to strike Potter's and Dobson's testimony regarding the alleged threat on the basis that it is conclusory and speculative.  (Pl.'s Resp. to Def.'s Stmt. of Fact ¶¶ 27–28.)  The motion is denied.  As lay witnesses, Potter and Dobson may provide opinions that are rationally based on their perception of the incident.  *See* Fed. R. Evid. 701.

relations manager, to investigate the incident. Potter then prepared a written statement documenting his recollection of the incident.

Larson and Hoppenstedt held a telephone conference with Smith and his attorney on December 21, 2006. Smith declined to give his version of events over the phone, and instead submitted a written response to Potter's allegations via email on December 28, 2006. (Pl.'s Exs. G-14, G-20.) Smith denied that he had threatened Potter or Dodson and stated that he had simply been trying to explain that he had a medical condition that required him to sit and to take medications with food. (Pl.'s Ex. G-14.) Smith's response also states that Potter and Dodson had previously been unwilling to provide him with accommodation for a medical condition that required him to take bathroom breaks at unassigned times. (*Id.*) Smith wrote that he had complained to Larson about Potter and Dodson on December 8, 2006, and that since then the two supervisors had retaliated against him for making the complaint by scrutinizing his work and presenting him with numerous disciplinary action forms. (*Id.*)

During their investigation, Larson and Hoppenstedt reviewed Smith's file together. (Hoppenstedt Dep. at 67.) At the end of the investigation, Hoppenstedt concluded that Smith had threatened Potter and that he should be terminated. Hoppenstedt testified that Smith's conduct towards Potter was "completely unacceptable" because it was "threatening . . . insubordinate [and] disrespectful. And I cannot have supervisors feel threatened or afraid of being around their employees because of the actions the employee chose to take." (*Id.* at 182.) At her deposition, Hoppenstedt could not recall what documents she relied on in reaching the decision to terminate Smith.

Approximately six weeks after he was terminated from Levy, Smith began a new job at the Park Newberry Condominiums, where he is still employed. Smith filed a charge with the Equal Employment Opportunity Commission ("EEOC") on March 15, 2007. (Compl. Ex. A.)

## SUMMARY JUDGMENT STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. *Id.* While the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor, *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), where a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323–24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Id.* at 323. In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000).

## DISCUSSION

### I. Compliance with Local Rule 56.1

Before reaching the merits of the Levy's motion for summary judgment, the court will address certain deficiencies in Smith's response. Local Rule 56.1(a) requires the party seeking

summary judgment to submit, among other things, a statement of material facts, which consists of short, numbered paragraphs and specific references within each paragraph to the affidavits, parts of the record, and other supporting materials relied on to support the facts set forth in each paragraph. L.R. 56 .1(a)(3). The non-moving party must then submit a concise response to the movant's statement of facts as well as a separate statement containing any additional facts that require denial of summary judgment. L.R. 56.1(b)(3). All material facts contained in the statement of the moving party are deemed admitted unless controverted by the opposing party's statement. *Id.*

Smith did not submit a separate statement of additional facts as required by Local Rule 56.1(b)(3). Instead, he cites to his declaration and certain deposition testimony in his response brief. The court's standing order makes clear that parties must comply with Local Rule 56.1, and the Seventh Circuit has repeatedly emphasized that district courts may expect "strict compliance" with the rule. *See*, *e.g.*, *Schmidt* v. *Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 630 (7th Cir. 2010) (citing *Patterson* v. *Ind. Newspapers Inc.*, 589 F.3d 357, 360 (7th Cir. 2009)); *Waldridge* v. *Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (collecting cases). "The local rule serves an important function by ensuring that the proposed findings of fact are in a form that permits the district court to analyze the admissible evidence supporting particular factual propositions and determine precisely what facts, if any, are material and disputed." *Schmidt*, 599 F.3d at 630. In doing so, it "provides district courts with the means to resolve motions for summary judgment on the merits." *Id.*; *see also Waldridge*, 24 F.3d at 923 ("[T]he factual statements required by Rule 56.1 . . . [are] roadmaps, and without them the court should not have to proceed further, regardless of how readily it might be able to distill the relevant

information from the record on its own.").  Accordingly, the court has disregarded the narrative references to Smith's declaration as well as references to other facts that should have been included in a separate Local Rule 56.1 statement of additional facts.

Levy argues that the court should also deem many of its statements of fact admitted because Smith's responses either fail to specifically admit or deny its statements of fact or are not supported by the cited portions of the record.  In addition, Levy asserts that many of Smith's responses should be stricken because they include non-responsive statements of fact that should have been submitted in a separate statement.  The court will not rule on each disputed statement of fact individually.  Rather, it has taken Levy's arguments into account and has included in the background section only those facts that are properly supported and were submitted in compliance with Local Rule 56.1.  Non-responsive statements of fact that should have been asserted in a separate statement have been disregarded.

## II.     Smith's ADEA Claims

Smith does not respond to Levy's argument that summary judgment must be granted in its favor with respect to his ADEA claims.  In addition, there is no evidence in the record that would support an age discrimination claim.  Therefore Levy's motion will be granted with respect to Counts III and IV of the first amended complaint.

## III.    Smith's ADA Claims

Smith claims that Levy violated the ADA by failing to accommodate his disability and by retaliating against him for requesting a reasonable accommodation.  Levy argues that summary judgment must be granted in its favor because Smith has not demonstrated a *prima facie* case for failure to accommodate or retaliation under the ADA.

A.    **Failure to Accommodate**

To establish a *prima facie* case for failure to accommodate under the ADA, Smith must demonstrate that (1) he is "a qualified individual with a disability," (2) Levy knew of his disability, and (3) Levy failed to reasonably accommodate his disability. *See, e.g.*, *Kotwica* v. *Rose Packing Co.*, 637 F.3d 744, 748 (7th Cir. 2011). "To survive a motion for summary judgment, a plaintiff must present the court with evidence that, if believed by a trier of fact, would establish all three elements of [his] claim." *Id.*

The version of the ADA that was in effect when Smith was terminated defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (amended 2009). "Disability" is defined, in relevant part, as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." *Id.* § 12102(1)(A).[7] The EEOC has interpreted "impairment" to mean "[a]ny physiological disorder or condition . . . affecting one or more body systems," including the digestive system. 29 C.F.R. § 1630.2(h) (2006).[8] As the statute's definition of "disability" makes clear, having an impairment is not enough; a plaintiff must also show that the impairment "substantially limits" a major life activity. *Toyota Motor Mfg., Ky., Inc.* v. *Williams*, 534 U.S. 184, 195, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002) (quoting 42 U.S.C.

---

[7] Smith does not argue that he has a disability because he has a "record of such an impairment" or because Levy "regarded [him] as having such an impairment." *Cf.* 42 U.S.C. § 12102(1)(B)–(C).

[8] The EEOC regulations are "not binding on this court, [but] such administrative interpretations 'do constitute a body of experience and informed judgment to which courts and litigants may properly resort to guidance.'" *O'Neal* v. *City of New Albany*, 293 F.3d 998, 1009 (7th Cir. 2002) (quoting *Meritor Sav'g Bank, FSB* v. *Vinson*, 477 U.S. 57, 65, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)).

§ 12102(2)(A)), *overturned by* ADA Amendments Act of 2008, Pub. L. No. 110–325, 122 Stat. 3553 (2008). The EEOC has interpreted "substantially limits" to mean that an individual is either "'[u]nable to perform a major life activity that the average person in the general population can perform," or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1) (2006); *see also EEOC* v. *Sears, Roebuck & Co.*, 417 F.3d 789, 800 (7th Cir. 2005) (holding that *Toyota* does not preclude courts from seeking guidance from 29 C.F.R. § 1630.2(j)). In determining whether an individual is substantially limited in a major life activity, relevant factors include the severity of the impairment, its duration, and the permanent or long-term impact of the impairment. 29 C.F.R. § 1630.2(j)(2) (2006).

Smith claims that he is a qualified individual with a disability because he has an impairment that substantially limits him in the major life activities of eliminating bodily waste, working, and eating. *See* 42 U.S.C. § 12102(1)(A). The evidence of record that relates to Smith's alleged disability is (1) Smith's absence from work for three days in November 2006, (2) a doctor's note stating that Smith should be allowed sit and use the restroom "frequently," and (3) Smith's complaints that he was not able to use the bathroom or eat as often as he needed to.

Even drawing all inferences in Smith's favor, the evidence does not support the conclusion that Smith's impairment – which was undiagnosed during the relevant time period – substantially limited him in any of the major life activities that he identifies. Several courts,

although not the Seventh Circuit, have recognized that waste elimination is a major life activity under the version of the ADA in effect in 2006. *See EEOC* v. *Cast Prods., Inc.*, No. 07 C 5457, 2009 WL 595935, at *3 (N.D. Ill. Mar. 9, 2009) (citing cases from this district and the Third, Fourth, and Sixth Circuits); *see also Gratzl* v. *Chief Judges of the 12th, 18th, 19th & 22nd Judicial Districts*, 601 F.3d 674, 679 (7th Cir. 2010) (noting that although the Seventh Circuit has never held that the elimination of waste is a major life activity, it has held that similar bodily functions, including eating, are major life activities, but ultimately declining to rule on the issue).[9] The EEOC's interpretation of the term "major life activities" further supports the conclusion that a substantial limitation in the ability to eliminate waste may constitute a disability under the ADA. *See* 29 C.F.R. § 1630.2(i)(ii) (2006) (major life activities include the operation of the bowel and bladder functions). Here, however, the record is too thin to support the inference that Smith's impairment created a "substantial" limitation. The doctor's note simply states that Smith needed to use the bathroom "frequently." This term, taken alone, does not indicate that Smith was "unable" to control the elimination of waste, that his level of control was "significantly restricted . . . as compared to . . . the average person in the general population," *see* 29 C.F.R. § 1630.2(j)(1), or that his impairment affected his life "considerabl[y]" or "to a large degree." *Toyota*, 534 U.S. at 197 (quotations and citations omitted). In addition, although the record shows that Smith was dissatisfied with the number of bathroom breaks he was able to take, it is unclear how often, or with what level of urgency, these breaks were required. Finally, there is no evidence regarding Smith's physical symptoms, the expected duration of Smith's condition, or its severity. This is not to say that all of these forms

_____

[9] The current version of the ADA explicitly states that the operation "major bodily functions," including the function of the bowel and bladder, are major life activities. 42 U.S.C. § 12102(2)(B).

of evidence would be *required* to support a finding that Smith is disabled, but given the ADA's "demanding" standard for qualifying as disabled, *Sears*, 417 F.3d at 800–01 (quoting *Toyota*, 534 U.S. at 197), something more than the doctor's note and Smith's internal complaints is needed. Indeed, the one case Smith cites in support of his argument is readily distinguishable on the grounds that the evidentiary record was replete with facts establishing that the plaintiff had suffered from a diagnosed impairment for many years (Crohn's Disease) and had experienced extreme weight loss, chronic and severe diarrhea, no appetite, and had several surgeries to drain abscesses in her intestines. *See EEOC* v. *Browning-Ferris, Inc.*, 262 F. Supp. 2d 577, 584–85 (D. Md. 2002). Therefore Smith has not demonstrated that there is a genuine issue of material fact as to whether he is limited in the major life activity of eliminating waste.

Nor has Smith demonstrated that he is limited in the major life activity of working. A plaintiff claiming to be substantially limited in the major life activity of working must demonstrate that he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Squibb* v. *Mem. Med. Ctr.*, 497 F.3d 775, 782 (7th Cir. 2007) (quoting 29 C.F.R. § 1630.2(j)(3)(i)). "The impairments must substantially limit employment generally, not merely preclude an employee from performing either a particular specialized job or a narrow range of jobs." *Kupstas* v. *City of Greenwood*, 398 F.3d 609, 613 (7th Cir. 2005) (citations omitted) (internal quotation marks omitted). Accordingly, unless the plaintiff's limitations are so severe that it is obvious that he will be foreclosed from a large class of jobs, he must present some evidence of the number and types of other jobs in the geographic region that he would not be able to perform. *Id.* (citing *EEOC* v. *Rockwell Int'l Corp.*, 243 F.3d 1012,

1017–18 (7th Cir. 2001)).  Smith has submitted no evidence regarding the types of jobs that he

would not be able to perform.  Moreover, his assertion that he is limited in the major life activity

of working is seriously undermined by the fact that he received new employment within six

weeks of his termination, even though his impairment was allegedly ongoing.  There is no

genuine issue of material fact as to whether Smith is limited in the major life activity of working.

Finally, the only evidence related to the major life activity of eating is Smith's assertion

to Potter that he should not have been disciplined for eating at his post because his medical

condition required him to do so.  Although eating constitutes a "major life activity," *Lawson* v.

*CSX Transp., Inc.*, 245 F.3d 916, 923 (7th Cir. 2001), this evidence does not establish that

Smith's impairment resulted in a "substantial limitation" on the way in which he was able to

consume food.  Taking all of the foregoing into account, Smith has failed to establish a *prima*

*facie* case for failure to accommodate under the ADA.

Smith argues, however, that he is not required to demonstrate that he is disabled in order

to survive Levy's motion for summary judgment.  He asserts that in fact it is Levy's burden to

prove the *absence* of evidence of a disability covered by the ADA.  Smith is wrong.  "No matter

the type of discrimination alleged . . . a plaintiff must establish first that he was 'a qualified

individual with a disability.'"  *Sieberns* v. *Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1022 (7th Cir.

1997) (quotations and citations omitted).  Therefore, once Levy moved for summary judgment,

Smith was required to show that there is evidence creating a genuine issue of material fact.  *See,*

*e.g.*, *Insolia*, 216 F.3d at 598 ("Once the party moving for summary judgment uncovers a hole in

the opponent's case, the nonmoving party that bears the ultimate burden at trial must show that

there is evidence creating a genuine issue of material fact.").  Of course, Smith is entitled to have

all inferences drawn in his favor. But that does not relieve him of his obligation to demonstrate the merits of his affirmative case. In the oft-quoted words of the Seventh Circuit, summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht* v. *Wisc. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999), *receded from on other grounds by Higgins* v. *Mississippi*, 217 F.3d 951, 954 (7th Cir. 2000). Accordingly, Smith cannot rely on generalities and citations to purportedly analogous cases to meet his evidentiary burden. Because Smith has not demonstrated that there is a genuine issue of material fact with respect to his *prima facie* case, Levy's motion for summary judgment on his failure to accommodate claim will be granted.

## B. Retaliation

The anti-retaliation provision of the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). The prohibition applies when an employee has raised a good-faith claim under the ADA; it is immaterial whether the employee is actually disabled. *See, e.g.*, *Cassimy* v. *Bd. of Educ. of Rockford Pub. Schs., Dist. No. 205*, 461 F.3d 932, 938 (7th Cir. 2006). A plaintiff may establish a case of retaliation under either the direct or indirect method of proof. *See, e.g.*, *Dickerson* v. *Bd. of Trustees of Comm. College Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). Smith argues that the evidence is sufficient to establish a claim for retaliation under either method. The court will first consider whether Smith's claim succeeds under the indirect method.

Under the indirect method of proof, Smith may establish a *prima facie* case by demonstrating (1) he engaged in protected activity, (2) he was meeting Levy's legitimate performance expectations, and (3) he suffered an adverse employment action that similarly-situated employees who did not engage in protected activities did not suffer. *See Dickerson*, 657 F.3d at 601–02. Once Smith has established a *prima facie* case, there is a presumption of discrimination and the burden shifts to Levy to provide a legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 602. If Levy meets its burden, the burden then shifts back to Smith to demonstrate that the stated reason was pretextual. *Id.*

Smith satisfied the first element of his *prima facie* case by complaining about his lack of accommodation to Potter.[10] *See Casna* v. *City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009) (informal complaints may constitute protected activity for the purpose of ADA retaliation claims); *see also Wilcox* v. *Am. Stores*, No. 01 C 2138, 2002 WL 31654938, at *9 (N.D. Ill. Nov. 22, 2002) (complaint about failure to accommodate constituted protected activity); *Williams* v. *Eastside Lumberyard & Supply Co.*, 190 F. Supp. 2d 1104, 1120–22 (S.D. Ill. 2001) (same). With respect to the second element, Levy does not dispute that Smith satisfied its legitimate employment expectations.

Smith has not, however, demonstrated that there is a genuine issue of material fact as to whether a similarly situated individual was treated differently. Smith argues that Robinson was similarly situated because Dodson prepared an employee action form stating that Robinson

---

[10] Smith asserts that he engaged in a statutorily protected activity by complaining to Larson, in the human resources department, on December 8, 2006. Evidence regarding Smith's meeting with Larson should have been submitted in a statement of additional facts, not in narrative form in Smith's brief or in non-responsive denials to Levy's statements of facts. Moreover, as discussed *supra* at note 5, the evidence cited by Smith does not support his responses. The court has disregarded Smith's arguments regarding the alleged meeting with Larson.

should be suspended or discharged because Robinson had been insubordinate and refused to work past his shift as ordered by Dodson. (Pl.'s Ex. G-9.) Dodson wrote that Robinson had "been given extreme latitude and leniency at his position regarding his attendance and performance" and that this leniency was "far outside the progressive disciplinary action guidelines." (*Id.* at 2.) Robinson was subsequently given a last chance agreement because of his lateness violations, which stated that he would be terminated if he was late or left early three times in the six months after he signed the agreement. (Pl.'s Ex. G-10.) Smith argues that Robinson was treated differently because he was given a last chance agreement, whereas Smith was terminated immediately for his alleged misconduct.

As a threshold issue, Smith's comparator evidence was not submitted in an additional statement of facts. Therefore, because Smith fails to cite to evidence of record regarding a similarly situated individual, Levy's motion for summary judgment must be granted.

Even if the court were to take the evidence into account, however, it would not establish that Robinson was similarly situated because Robinson, unlike Smith, did not engage in threatening misconduct. In cases involving differential discipline, a plaintiff must show that comparators "engaged in similar misconduct," otherwise described as misconduct of "comparable seriousness." *Coleman* v. *Donahoe*, 667 F.3d 835, 851 (7th Cir. 2012).[11] Hoppenstedt terminated Smith because she concluded that he had threatened a supervisor and she could not "have supervisors feel threatened or afraid of being around their employees because of the actions the employee chose to take." (Hoppenstedt Dep. at 182.) She further testified that she did not always use progressive discipline when employees had engaged in

---

[11] Although *Coleman* and other cases cited herein are Title VII cases, the court may look to Title VII retaliation cases for guidance in deciding retaliation cases under the ADA. *See Casna*, 574 F.3d at 427.

threatening behavior and that, in Smith's case, the "level of conduct [did] not warrant there being prior warnings or discipline." (*Id.* at 182–83.) Robinson, in contrast, was disciplined for being late to work and refusing to work for the full duration of his shift. There is no evidence to support the conclusion that he threatened another employee or a supervisor. The two disciplines involved different types of policies and different types of misconduct. Therefore the evidence cited by Smith does not support the inference that Robinson was a similarly situated employee. *Compare with Coleman*, 667 F.3d at 846–51 (employees who held another employee down while brandishing a knife were similarly situated to plaintiff, who was disciplined for indirectly threatening her supervisor during a therapy session).

Nor does the record indicate that there is a genuine issue of material fact as to pretext, which Smith would need to demonstrate if he were to succeed on his *prima facie* case. Levy has offered a legitimate, non-discriminatory reason for terminating Smith – threatening a supervisor. To establish that Levy's reasons are pretextual, Smith must present evidence "suggesting that [Levy] is dissembling." *Coleman*, 667 F.3d at 852 (quoting *O'Leary* v. *Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011)). "The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered" as to why Smith was terminated. *Id.* (quoting *O'Leary*, 657 F.3d at 635). In general, courts are reluctant to discard the conclusions of an employer's investigation into alleged misconduct. *See, e.g.*, *Luster* v. *Ill. Dep't of Corr.*, 652 F.3d 726, 732–33 (7th Cir. 2011); *Bodenstab* v. *Cnty. of Cook*, 569 F.3d 651, 657–59 (7th Cir. 2009). Smith argues that Levy is estopped from relitigating the accuracy of Hoppenstedt's investigation because an Illinois Department of Employment Security Appeals Division hearing referee concluded that Smith's statement was

not objectively threatening and therefore Smith was not barred from receiving unemployment benefits under the Illinois Unemployment Insurance Act. (*See* Pl.'s Ex. G-16.) By Illinois statute, the hearing referee's decision is not admissible in these proceedings and it cannot constitute *res judicata*. *See* 820 Ill. Comp. Stat. 405/1900(B). Therefore Smith cannot rely on the hearing referee's decision to establish pretext. *See Matthews* v. *Wal-Mart Stores, Inc.*, 417 Fed. App'x 552, 555 (7th Cir. 2011); *Jackson* v. *United Parcel Serv., Inc.*, 337 Fed. App'x 569, 571 (7th Cir. 2009); *Wittenberg* v. *Wheels, Inc.*, 963 F. Supp. 654, 660–61 (N.D. Ill. 1997); *Williams* v. *St. Francis Hosp. of Evanston*, No. 94 C 1911, 1995 WL 423494, at *11 (N.D. Ill. Jul. 17, 1995).

Smith also argues that the evidence suggests that Hoppenstedt's investigation was inadequate and that therefore the court should conclude that there is a disputed issue of fact as to pretext. In particular, Smith criticizes Hoppenstedt for failing to recall each of the documents from his file at her deposition. The deposition took place over five years after Smith's termination, however. Moreover, Hoppenstedt testified that when she considered requests for discharge her general practice was for Larson to "come with the files, and we'd sit down. He'd open up the file and we'd go through everything." (Hoppenstedt Dep. at 67–68.) Hoppenstedt further testified that during this time period they had one hundred percent turnover and 1,200 employees, so that she was involved with "a lot" of requests for discharge during her tenure as assistant vice president of human resources. (*Id.* at 68.) Under these circumstances, the fact that Hoppenstedt's memory faded does not suggest dishonesty. Smith also argues that Hoppenstedt's conclusions cannot be credited because she did not personally interview any witnesses. Larson, however, did interview witnesses and he shared the results of his

investigation with Hoppenstedt.  Smith has not cited any evidence that would reasonably give rise to the inference that Hoppenstedt's investigation should be discredited.  Indeed, as the Seventh Circuit has emphasized, the relevant question is not whether the investigation yielded an accurate description of events, but rather whether Levy honestly believed Potter's and Dobson's descriptions of the December 14 incident.  *See Jones* v. *Union Pac. R.R. Co.*, 302 F.3d 735, 744 (7th Cir. 2002); *see also Kariotis* v. *Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677–78 (7th Cir. 1997).  Smith has not demonstrated that Levy's explanation for his termination is dishonest.  For all of these reasons, Smith has not demonstrated that there is a genuine issue of fact as to whether his claim for retaliation can succeed under the indirect method of proof.

To establish retaliation under the direct method of proof, Smith must show (1) he engaged in statutorily protected activity, (2) he suffered an adverse employment action, and (3) a causal connection.  *Dickerson*, 657 F.3d at 601.  Smith easily satisfies the first two elements of his case.  He engaged in statutorily protected activity when he complained to Potter about his lack of accommodation, and his termination constitutes an adverse employment action.  Smith has not, however, demonstrated causality.

Smith argues that the short amount of time between his complaint and termination supports an inference of causation.  While it is true that suspicious timing may give rise to the inference that an employee's complaints and an adverse employment action are related, *Benuzzi* v. *Bd. of Educ. of City of Chicago*, 647 F.3d 652, 665–66 (7th Cir. 2011), the court must also take other relevant circumstances into account, including whether any alleged intervening events might have justified the employer's action.  *See id.* at 666; *Davis* v. *Time Warner Cable of Sw. Wisc., L.P.*, 651 F.3d 664, 675 (7th Cir. 2011).  Here, Levy asserts that it terminated Smith

because Smith threatened Potter during the December 14 meeting. Smith does not address the significance of this intervening event in arguing that he has satisfied his burden under the direct method of proof. Rather, he argues that Hoppenstedt's investigation was inadequate and should be discredited. For the reasons discussed *supra* at 18–20, this argument is unavailing. Given the December 14 incident and the investigation that preceded his termination, Smith needs point to something more than "suspicious timing" to establish that his complaint to Potter caused his termination. *Cf. Loudermilk* v. *Best Pallet Co.*, 636 F.3d 312, 314–15 (7th Cir. 2010) (fact issue remained as to pretext where black employee told his supervisor that he believed he was being treated differently from Hispanic workers and supervisor fired him on the spot); *Humphries* v. *CBOCS West, Inc.*, 474 F.3d 387, 407 (7th Cir. 2007) (fact issues remained as to pretext where employer failed to conduct any investigation of the veracity of co-worker's complaint about plaintiff and evidence showed that similarly situated employees had not been disciplined as harshly for committing similar infractions). For all of these reasons, Smith has not demonstrated that he has a claim for retaliation and Levy's motion for summary judgment with respect to Counts I and II of the first amended complaint will be granted.

## CONCLUSION AND ORDER

For the foregoing reasons, Levy's motion for summary judgment [#43] is granted. The clerk is directed to enter judgment in favor of Levy. This case is terminated.

Dated: May 10, 2012          Enter: _____
                                    JOAN HUMPHREY LEFKOW
                                    United States District Judge